# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 2:08-0363-07 |
| | | CIVIL NO. 2:11-1856 |
| VERSUS | * | JUDGE HAIK |
| CHAD LAWRENCE MOUTON | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Chad Lawrence Mouton. [rec. doc. 268]. The Government has filed an Answer and Memorandum in Support, to which petitioner filed a Reply. [rec. docs. 275 and 277]. For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE**. Because the undersigned is able to make this recommendation based on the record, transcripts and briefs filed by the parties, no evidentiary hearing is necessary.[1]

## BACKGROUND

On December 10, 2008, petitioner, was named in a thirty-one count indictment which charged petitioner with various drug and firearm offenses, namely, conspiracy to possess with the intent to distribute cocaine and methamphetamine, distribution of methamphetamine, distribution of marijuana, possession of methamphetamine with intent to distribute, possession of a firearm by a convicted felon, possession of a firearm in

---

[1]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record. *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).

furtherance of a drug trafficking offense, and unlawful use of a communication facility. [rec. doc. 1].

On July 15, 2009, the government filed an Information of Prior Conviction advising petitioner that he was subject to the enhanced penalties set forth in 21 U.S.C. § 841(b)(1) and 843(d) based on petitioner's two prior felony drug convictions. [rec. doc. 120].

On August 17, 2009, Lester J. Gauthier, Jr. filed a Motion to Withdraw as counsel of record for petitioner. [rec. doc. 122]. Following a September 16, 2009 hearing before the undersigned, the Motion was denied. [rec. doc. 131].

On February 17, 2010, petitioner pled guilty to counts one and fifteen of the indictment, to wit, conspiracy to possess with the intent to distribute cocaine and methamphetamine and possession of a firearm by a convicted felon. [rec. docs. 163 and 164]. In the Stipulated Factual basis for the plea, petitioner stipulated that he purchased methamphetamine from co-defendant Landreneau who purchased the drugs from a dealer in Houston, Cesar, and that during the course of the conspiracy, he personally distributed more than five kilograms of methamphetamine. [rec. doc. 164-2, pg. 5 and 10].

In connection with the plea, petitioner executed a Plea Agreement in which he acknowledged, in writing, that he had been convicted of two prior felony drug offenses, and he therefore faced a statutory mandatory life sentence under 841(b)(1)(A) on count one. However, the United States agreed that if petitioner rendered substantial assistance

2

in its investigation and prosecution of other persons, it might elect to reward petitioner for his cooperation by pursuing enhancement of the statutory penalty on the basis of only one prior felony (rather than two), thereby reducing petitioner's statutory penalty to a mandatory minimum term of twenty years imprisonment up to a maximum of life under 841(b)(1)(A) on count one. [rec. doc. 164].

A Pre-Sentence Investigation Report (PSI) was issued.  Under the Guidelines, petitioner's base offense level was 36, to which an additional two levels were added because a dangerous weapon was possessed in connection with the offense and three levels were subtracted for petitioner's timely acceptance of responsibility, for a total offense level of 35.

Petitioner met the criteria to be deemed a career offender because his conviction was for a controlled substance offense and he had at least two prior felony controlled substance offenses.  However, because calculation of petitioner's total offense level as a career offender resulted in a lesser total offense level, under the Guidelines, the greater total offense level is applicable.  Hence, petitioner's total offense level remained a 35.

Petitioner's criminal history computation revealed three prior convictions, for which three criminal history points were assessed.  Generally these three points would place petitioner in criminal history category II.  However, because petitioner was deemed a career offender, his criminal history category was automatically adjusted to level VI.

Petitioner's total offense level of 35 and his criminal history category of VI resulted in a Guidelines sentencing range of 292 to 365 months.

By letter dated April 28, 2010, petitioner's counsel objected, noting that the application of the career offender guidelines places petitioner in a sentencing range which is disproportionate to the criminal conduct which forms the basis petitioner's career offender status, namely two possession with intent to distribute marijuana convictions.

The probation department issued an addendum to the PSI on May 17, 2010 in which it is noted that if the government elected to pursue sentencing enhancement predicated solely on one of petitioner's prior felony convictions, petitioner would be facing a statutorily required minimum sentence of twenty years (240 months) up to life imprisonment, instead of a statutory mandatory life sentence.   Moreover, if the Court determined that petitioner's criminal history category substantially over-represents the seriousness of petitioner's criminal history, because petitioner is a career offender, under the Guidelines, downward departure would be based on one less criminal history category, that is, petitioner's sentencing range would be determined under criminal history category V.  Thus, petitioner's total offense level of 35 and his criminal history category of  V would result in a Guidelines sentencing range of 262 to 327 months.

By Sentencing Memorandum dated June 14, 2010, petitioner's counsel advised the Court that, given petitioner's substantial assistance, the government had agreed to pursue a statutory sentencing enhancement predicated on only one of petitioner's prior felony convictions.  Counsel also re-urged petitioner's objection to the PSI, arguing that petitioner's career offender status overstated petitioner's criminal history, given that his

4

two prior felony convictions were for  possession with intent to distribute marijuana, neither of which involved large quantities of marijuana.

On September 27, 2010, petitioner appeared for sentencing.  The Court noted that the government was utilizing only one prior felony conviction for statutory enhancement purposes.  Counsel argued that although petitioner could not receive a sentence below the statutory minimum of twenty years, application of the career offender guideline results in a sentence which is disproportional to petitioner's criminal conduct and that therefore, petitioner should be sentenced below the Guidelines range to the statutory minimum of twenty years imprisonment.  More specifically, counsel argued that both predicate convictions were for small amounts of marijuana, and that the second offense normally would be considered a misdemeanor, had it not been a second offense, which would have resulted in petitioner's being placed in criminal history category II.  However, because it was a second offense, this minor offense therefore escalated petitioner into career offender status, thereby requiring petitioner to be placed in a criminal history category which results in a sentencing range disproportionate to petitioner's criminal conduct. [rec. doc. 240,  pgs. 3-5].

Petitioner's counsel further argued that petitioner's conduct was no better and no worse than his co-defendants and that to sentence him to more than the twenty year statutory minimum under the Guidelines, based on his career offender status, would result in sentencing disparity. [*Id*. at pg. 9-10, 13].

5

Petitioner's objection to the PSI was overruled, the Court finding that petitioner was, in fact, a career offender and that, as such, his objection was to the career offender law rather than its application. [*Id*. at pg. 7]. The Court further rejected petitioner's arguments for imposition of the statutory minimum sentence, below the Guidelines range, under the factors set forth in 18 U.S.C. § 3553, noting that petitioner was always armed when committing criminal acts, the seriousness of the offense, the goals of promoting respect for the law, just punishment and adequate sentence, "almost screams out to say that [petitioner] should get the max and not the minimum . . . . and that to go above or below the Guidelines would be counterproductive." [*Id*. at 14.]. The Court therefore sentenced petitioner to two hundred ninety-two months imprisonment for count one and one hundred and twenty months imprisonment on count fifteen, the sentences to run concurrent. The remaining substantive counts of the indictment were dismissed. [*Id*. at 15; rec. docs. 220-222].

Both petitioner and defense counsel objected to the sentence on the ground that the Guidelines overstated the seriousness of petitioner's criminal history. [*Id*. at 19]. In response, the Court admonished petitioner "Your problem is all those years that you got away with little things here and little things there. You thought you were invincible because you carried a damn gun, but your not. You are not. And maybe now you're finally getting the sentence you deserve for some of the stuff you have done . . . . so you may not like it, but you got what you have been playing to get for years. It just finally caught up to you." [*Id*. at 19].

6

Petitioner's convictions and sentences were affirmed on direct appeal by the Fifth Circuit on June 23, 2011, the Judgment issued as mandate on July 15, 2011. [rec. doc. 89]. On appeal, petitioner argued that under the plea agreement, the Court could only use one of his prior convictions to determine the applicable Guidelines range, and that since the government acknowledged his substantial assistance, he should have received a one-level reduction in his criminal history category. The Fifth Circuit rejected these arguments finding that at sentencing the Court was not bound by the stipulations of the parties, and that the lower Guideline range urged by petitioner applied only if the Court found that petitioner's criminal history category over-represented petitioner's criminal history, but that the Court had made no such finding. [rec. doc. 261 at pg. 3].

In the instant motion to vacate, petitioner asserts the following claims for relief: (1) that his sentence was imposed in violation of the principles set forth by the United States Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005); (2) that he received ineffective assistance of counsel because counsel (a) allowed petitioner to plead guilty given the large amount of drugs involved in the conspiracy, (b) failed to request a reduction for petitioner's minor or minimal role in the offense, (c) failed to object to the mischaracterization of his prior conviction in the 36th Judicial District Court, (d) failed to challenge his career offender classification based on his prior conviction in the 36th Judicial District Court, a non-qualifying predicate offense; (3) that petitioner was completely denied the assistance of counsel because petitioner's attorney

7

represented him under a conflict of interest; (4) that petitioner received ineffective

assistance of appellate counsel because counsel failed to challenge his career offender

classification or present a claim under *Booker;* and (5) that Mouton's guilty plea was not

knowingly or voluntarily entered because petitioner did not receive the statutory

mandatory minimum sentence.

## <u>LAW AND ANALYSIS</u>

**Claims Properly Considered in this § 2255 Motion/Scope of Review**

A federal prisoner may collaterally attack his conviction and sentence by filing a

motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Section

2255 provides four grounds justifying relief:  (1) "that the sentence was imposed in

violation of the Constitution or laws of the United States;" (2) "that the court was without

jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the

maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral

attack."

While this language appears broad, the scope of review is actually narrow.  The

Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral

challenge may not do service for an appeal."  *United States v. Shaid,* 937 F.2d 228, 231

(5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141

(1992) *citing United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982).

Following a conviction and exhaustion or waiver of the right to direct appeal, federal

courts presume a defendant stands fairly and finally convicted.  *United States v.*

8

*Cervantes*, 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at 231-32; *Frady,* 456 U.S. at 164.

As a result, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude.  *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962).   However, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural default and actual prejudice resulting from the error.  *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at 166.[2]

Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice.  *Cervantes*, 132 F.3d at 1109 *citing United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).  The issues presented in the instant case are either contrary to law or plainly refuted by the record.  Accordingly, no evidentiary hearing is necessary.  The issues will be resolved by considering the briefs filed by the parties and the court record.

---

[2]A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Shaid*, 937 F.2d at 232; *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986).  Petitioner does not contest his actual guilt, thus this exception is inapplicable here.

**I. *Booker* Violation**

Petitioner contends that he was sentenced in violation of the principles set forth by the United States Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005) because the Court calculated his advisory Guideline sentencing range on the basis of facts which where not found by a jury or admitted by him.  It is clear that petitioner's *Booker* claim is procedurally barred.  The claim is nevertheless without merit.

In holding that the Sentencing Guidelines were advisory only, the Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), eliminated the Sixth Amendment concerns that prohibited a sentencing court from finding all facts relevant to sentencing within the statutory punishment range.  *See United States v. Prodencio,* 250 Fed. Appx. 43, 44 (5th Cir. 2007) (unpublished) and *United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir. 2005).  Indeed, the *Booker* Court explained that "when a trial judge exercises his discretion to select a specific sentence within a defined [statutory] range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Id*. at 233; *Mares*, 402 F.3d at 518.

For a violation of 21 U.S.C. § 841(a)(1) involving over 50 grams or more of methamphetamine, with one prior felony drug offense conviction, the statutory mandatory minimum sentence is 20 years and the statutory maximum term of imprisonment is life. Petitioner received a 292 month sentence which is within this statutory range.  Hence, the Court was within its constitutional authority in finding the facts that led to this discretionary sentence within the statutory range.   No *Booker* violation occurred.

## II.  Ineffective Assistance of Trial Counsel

Courts can consider claims of ineffective assistance of counsel that are brought for the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). However, petitioner's guilty plea constitutes a waiver of all non-jurisdictional defects in the prior proceedings.  *United States v. Glinsey,* 209 F.3d 386,392 (5th Cir. 2000); *United States v. Bendicks*, 449 F.2d 313, 315 (5th Cir. 1971). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *Glinsey*, 209 F.3d at 392.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.  The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th  Cir. 1986).

     *Strickland's* prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[3] A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.   With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Glinsey,* 209 F.3d at 392 *quoting Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Thus, the

---

[3]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
    An error by counsel, even if professionally unreasonable, does not
    warrant setting aside the judgment of the criminal proceeding if the error
    had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S.
    361, 364-65 (1981).

    Defendant must show that there is a reasonable probability that, but for
    counsel's unprofessional errors, the result of the proceeding would have
    been different.  A reasonable probability exists if the probability is
    sufficient to undermine confidence in the outcome.

    When a defendant challenges a conviction , the question is whether there
    is reasonable probability that absent the errors the fact-finder would
    have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

A petitioner must affirmatively prove prejudice. *Deville*, 21 F.3d at 659; *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998). Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635. Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green,* 160 F.3d at 1043.

Petitioner contends that he was denied the effective assistance of counsel because counsel (a) allowed petitioner to plead guilty given the large amount of drugs involved in the conspiracy, (b) failed to request a reduction for petitioner's minor or minimal role in the offense, (c) failed to object to the mischaracterization of his prior conviction in the

36th Judicial District Court, and (d) failed to challenge his career offender classification based on his prior conviction in the 36th Judicial District Court, a non-qualifying predicate offense.  For the following reasons, these claims are without merit and, accordingly, do not warrant *habeas* relief.

Initially the undersigned notes that petitioner's present claims are expressly refuted by petitioner's sworn testimony during his plea proceeding.  Petitioner acknowledged, in open court,  while under oath, that he had ample opportunity to discuss his case with Mr. Gauthier, that he believed that Gauthier knew and understood the facts and circumstances of the case the government had against him and that he was therefore satisfied with Mr. Gauthier's representation. [plea tr. rec. doc. 239, pg. 4].  Despite these representations, petitioner now claims the contrary.  Nevertheless, petitioner's claims are without merit.

**A. Allowing Petitioner to Plead Guilty**

Petitioner claims that counsel was ineffective by allowing petitioner to plead guilty given the large amount of drugs involved in the conspiracy.  More specifically, petitioner faults counsel for failing to recognize that petitioner's involvement with "extremely large quantities of methamphetamine" would expose him to a twenty-year mandatory term of imprisonment.

While petitioner faults counsel for negotiating a plea agreement in his case, the record reveals that counsel's actions under the circumstances were objectively reasonable and allowed petitioner to avoid a statutory mandatory life sentence, thereby causing petitioner to suffer no prejudice.

The record is overwhelmingly clear that defense counsel was well aware of the large amount of drugs involved in the conspiracy, as well as the strength of the government's evidence against petitioner, thereby subjecting petitioner to a mandatory life sentence.  Indeed, in his Motion to Withdraw, counsel confirmed his understanding of the case, alleging that, as a result of his involvement in the conspiracy, Mouton was in fact facing a statutory mandatory life sentence, and that the weight of the government's evidence against petitioner was substantial, given that the government had produced a CD rom containing 7700 pages of discovery material, which included video clips and audio tapes obtained by the use of body wires.  However, petitioner was not content with counsel's assessment of the case. [rec. doc. 122].

Despite the adverse position in which petitioner found himself, counsel nevertheless was able to obtain an agreement from the government which reduced the statutory mandatory life sentence to a statutory mandatory minimum sentence of only twenty years.  Under the circumstances, the Court cannot find that counsel was in any way deficient by allowing, or even encouraging, petitioner to accept the government's deal, in order to avoid being incarcerated for the remainder of his life.

Further, had petitioner proceeded to trial, given the weight of the government's evidence, it is virtually certain that petitioner would have received a mandatory life sentence.  Accordingly, notwithstanding petitioner's unsupported and conclusory protestations to the contrary, petitioner has failed to demonstrate that his counsel's actions caused him any prejudice.  To the contrary, counsel's actions greatly benefitted petitioner.

15

### B.  Failing to Request a Minor or Minimal Role Reduction

Next petitioner claims that counsel was ineffective for failing to request that petitioner receive a reduction based on his  minor or minimal role in the offense. However, it is clear that petitioner was not eligible for this reduction as petitioner's role in the offense was neither minor nor minimal.  The record reveals that after August 2007, co-defendant Landreneau was purchasing seven ounces of methamphetamine from Cesar, traveling to Houston two to three times a week, but later purchased eleven ounces every three or four weeks, and on the last five such visits purchased thirty-two ounces. Landreneau provided half of these drugs to petitioner for sale. [PSI, 18; rec. doc. 164-2, pg. 5].

Moreover, the government conducted numerous controlled purchases of methamphetamine from Mouton yielding over one hundred fourteen grams of methamphetamine. [PSI, 19, 20, 22, 23, 28, and 29].  Additionally, a drug ledger notebook and 81.92 grams of methamphetamine was seized from Mouton's residence on October 25, 2007 and another 5.9 grams was seized on June 24, 2008. [PSI, 24, 27 and 32].  Finally, petitioner admitted that he personally distributed more than five kilograms of methamphetamine during the course of the conspiracy. [rec. doc. 164-2, pg. 10]. Accordingly, petitioner's counsel was not deficient by failing to request this reduction.

### C.  Failing to Object to Mischaracterization of Prior Conviction

Petitioner argues that counsel was ineffective by failing to object to the

16

mischaracterization of his prior conviction in the 36th Judicial District Court.  Petitioner

contends that, as stated in his Plea Agreement, his conviction in the 36th Judicial District

Court was for simple possession of marijuana, not for possession of marijuana with intent

to distribute.  Hence, petitioner asserts that his counsel was ineffective for failing to

object to the mischaracterization of this conviction in his Plea Agreement.

The record reveals that in his Plea Agreement petitioner admitted that, "as set out

in the government's Information of Prior Conviction", he had committed possession of

marijuana, a felony, on January 8, 2000, for which he was sentenced to five and one half

years imprisonment on August 17, 2000. [rec. doc. 164, pg. 2].  The government's

Information of Prior Conviction contains certified copies of the documents evidencing

petitioner's conviction.  These documents reveal that petitioner was charged in a two

count Bill of Information, alleging in count one that petitioner possessed marijuana with

the intent to distribute, a felony, in violation of La.R.S. 40:966, and alleging in count two

that petitioner possessed an AK 47 assault rifle while possessing marijuana, a felony, in

violation of La.R.S. 14:95E. [rec. doc. 120-1, pg. 6].

A certified copy of the minutes of petitioner's August 17, 2000 guilty plea

proceeding indicates that petitioner plead guilty to count one of the bill of information, to

wit,  possession of marijuana with the intent to distribute, and that the State dismissed

count two, the firearm charge. [rec. doc. 120-1, pg. 8].  Further, the PSI correctly clarified

that petitioner's prior conviction in the 36th Judicial District Court as possession of

marijuana with intent to distribute. [PSI, 57].

17

In light of the above, it is clear that petitioner's prior conviction in the 36th Judicial District Court was for Possession of Marijuana with the intent to distribute.  Thus, had petitioner's counsel objected to the manner in which the conviction was described in the Plea Agreement, the government would merely have clarified that petitioner's  prior conviction was for possession with intent to distribute as set forth in the certified state court records attached to the government's Information of Prior Conviction and thereafter in the PSI.  Hence, petitioner cannot demonstrate that he suffered any prejudice as to this alleged oversight by counsel.

### D. Failing to Challenge Career Offender Classification

Finally, petitioner contends that counsel was ineffective for failing to challenge his career offender status based on his prior conviction in the 36th Judicial District Court, a non-qualifying predicate offense.  In light of the above, it is clear that petitioner's prior conviction in the 36th Judicial District Court was not for simple possession of marijuana, as now contended by petitioner, but rather was for possession with intent to distribute marijuana.  As such, the offense clearly qualifies as a prior "controlled substance offense" under the Guidelines.  § 4B1.2(a)(b).  Accordingly, petitioner's counsel was not ineffective for failing to challenge petitioner's career offender classification as petitioner was, in fact, a career offender.

## III. Conflict of Interest

In a related claim, petitioner contends that he was completely denied the assistance of counsel because  petitioner's attorney represented him under a conflict of interest.  In

support, petitioner cites this Court's ruling on counsel's Motion to Withdraw, in which petitioner asserts that the Court failed to adequately inquire into the nature of the alleged conflict by examining the relationship between petitioner and counsel, instead focusing on counsel's competence and capacity to provide adequate representation.

In cases like the present case, where the alleged conflict stems not from multiple or serial representation, but from conflicts between an attorney and his client, the applicable standard is that set forth above in *Strickland v. Washington*. *Beets v. Scott*, 65 F.3d 1258, 1265-1266 (5th Cir. 1995). Accordingly, to warrant *habeas* relief, petitioner must demonstrate the presence of a conflict between himself and counsel which caused him prejudice. This petitioner has not done.

The Court has reviewed the transcript of the motion hearing, which will be filed, under seal, in the record of these proceedings. That transcript reveals that this Court gave petitioner every opportunity to air his complaints about his counsel. Those complaints, however, did not reveal any conflict of interest between counsel and petitioner, much less any conflict which prejudiced petitioner. Rather, the transcript reveals that counsel was doing exactly what he was required and obligated to do, while advancing petitioner's best interests.

Contrary to his present claims, petitioner did not voice any complaints which could be remotely construed as an assertion that the relationship between petitioner and counsel had broken down, much less deteriorated to the point that there was any interference with

19

the attorney-client relationship.  To the contrary, petitioner complained that counsel was negotiating a plea on the only count that petitioner refused to plead guilty to, that counsel was initially only able to obtain a plea deal for a life sentence, and then was only able to obtain a deal whereby petitioner would receive 25 to 27 years imprisonment.  The Court explained that counsel was merely negotiating the best deal that he could obtain from the government for petitioner as he was obligated and required to do, and that counsel was then obligated to relay the government's offers to petitioner, along with his recommendation, for petitioner to decide what he wanted to do.

Petitioner admitted that this is exactly what counsel did, relayed the offers along with his recommendation.  Accordingly, the problem was not in anything counsel did or did not do, but, rather, that petitioner did not like the deals that the government offered. The Court explained to petitioner that the offers obtained from the government were not counsel's call, but rather were determined by the prosecutor, in accordance with what the government was willing to concede.

Petitioner also voiced his dissatisfaction with the law which allowed the government to seek statutory enhancement of his potential sentence based on what petitioner conceived as small marijuana cases.  The Court explained that this was the current state of the law, upheld by the United States Supreme Court, and that although he, counsel and the Court may not like the law, that was exactly what the law allowed the government to do.  The Court further explained that there was nothing counsel could do

20

to stop the government from proceeding in this manner, as there was no viable challenge available to the defense.

There being no basis for the Court to remove counsel, petitioner's Motion was accordingly denied.

The record also belies petitioner's present claim that he was constructively denied the assistance of counsel because counsel allegedly "made no attempt to represent his client's interests" or provide any assistance whatsoever in connection with petitioner's plea or sentencing.  The Supreme Court has held that the determination of whether an attorney rendered effective assistance of counsel must concentrate "on the adversarial process, not on the accused's relationship with his lawyer as such." *United States v. Cronic*, 466 U.S. 648, 657 fn. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).[4]  Thus, the Sixth Amendment right to counsel is constructively denied where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing . . . that makes the adversary process itself presumptively unreliable." *Id.*, 466 U.S. at 659.[5]  That was clearly

---

[4]Under *Cronic*, ineffective assistance of counsel may also be presumed if a defendant "is denied the presence of counsel at a critical stage" of the proceeding.  *See Bell v. Cone*, 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).  However, petitioner admits that his counsel was present at all stages of his prosecution.

[5]The Fifth Circuit has explained that "[a] constructive denial of counsel occurs . . . in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all. . . . [T]he attorney's failure must be complete. . . . [A] case does not come under *Cronic* merely because counsel failed to oppose the prosecution . . . at specific points in the trial. It is not enough for the defendant to show mere shoddy representation or to prove the existence of errors, omissions, or strategic blunders by counsel. Bad lawyering, regardless of how bad, does not support the *per se* presumption of prejudice." *Johnson v. Cockrell*, 301 F.3d 234, 238–39 (5th Cir. 2002) (internal citations omitted).

21

not the case herein.

The record before this Court establishes that there was no complete failure of representation.  To the contrary, the record demonstrates that petitioner's counsel rendered meaningful assistance throughout the entire criminal prosecution.  Counsel zealously represented petitioner at all stages of the criminal proceeding, first, obtaining a favorable plea bargain from the government, then filing objections to the PSI, and finally arguing before the Court on petitioner's behalf, repeatedly imploring the Court to sentence petitioner to the lowest statutory sentence possible, even though that sentence was below the advisory Guidelines range.

In sum, counsel was not only conscious of his duties to his client,  he sought conscientiously to discharge those duties, and in so doing, ensured that the adversary process was reliable.  Petitioner's claim therefore is without merit.

## IV.  Ineffective Assistance of Appellate Counsel

Petitioner additionally claims that he received ineffective assistance of appellate counsel because counsel failed to challenge his career offender classification or present a claim under *Booker*.

Ineffective assistance of appellate counsel claims are governed by the test set forth in *Strickland v. Washington*. *Amador v. Quarterman*, 458 F.3d 397, 410 (5th  Cir. 2006). Therefore, petitioner must demonstrate that his appellate counsel's performance in not raising his career offender and *Booker* claims was deficient and that he was prejudiced by

22

the deficient performance because the outcome of his appeal would have been different. *Id*. at 410–11.  "Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531–32 (5th Cir. 2008) (citation and internal quotation marks omitted).  Thus, appellate counsel is not ineffective for failing to present frivolous arguments on appeal. *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.1994);  *United States v. Garcia*, 348 Fed. Appx. 65, 66 (5th Cir. 2009) *citing United States v. Kimler*, 167 F.3d 889, 893 (5th  Cir. 1999) (failure to raise legally meritless argument cannot support an ineffectiveness claim).

As set forth above, petitioner was properly classified as a career offender and no *Booker* violation occurred.  Thus, any appellate claim based upon these arguments would have been meritless.  Petitioner therefore cannot demonstrate that appellate counsel's performance was deficient.  Moreover, petitioner cannot demonstrate that he was prejudiced by his appellate counsel's performance because he cannot show that the outcome of his appeal would have been different if his appellate counsel had raised these issues.  Accordingly, petitioner is not entitled to relief on these claims.

## V.  Validity of Petitioner's Guilty Plea

Finally, petitioner asserts that his guilty plea was not knowingly entered because petitioner did not receive the statutory mandatory minimum sentence. More specifically, petitioner contends that his plea was not knowingly entered because the three level

reduction which he received in the PSI (presumably for acceptance of responsibility) did not reduce petitioner's sentence to the statutory mandatory minimum of twenty years imprisonment.[6]

Although it is clear that petitioner's challenge to his guilty plea is procedurally barred, his claim is nevertheless without merit.  To be constitutionally valid, a guilty plea must be knowing and voluntary.  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) *citing  Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989).   Accordingly, the Court may not accept a guilty plea unless the defendant enters the plea voluntarily and with a complete understanding of the nature of the charge and the consequences of his plea.  This standard is rooted in the due process clause of the Constitution and is applicable in both state and federal courts.  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) *citing McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441 (1970) and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).

A guilty plea that was not knowingly, voluntarily, and intelligently entered is invalid.  *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996).  However,  a federal *habeas* court will uphold a guilty plea "if it is shown by the record . . . that a defendant understood the charge and its consequences when he pled guilty."  *Deville v. Whitley,* 21

---

[6]Petitioner also asserts that his plea was not knowing or voluntary because it was entered upon the ineffective advice of counsel because counsel incorrectly informed him that he was a career offender, because counsel advised him to plead guilty without knowing the amount of drugs involved in the conspiracy, and did not object to his not receiving a reduction for being a minor or minimal participant. Because the Court has already found that counsel was not ineffective with respect to these claims, petitioner's challenge to the voluntariness of his plea based on these claims of alleged ineffectiveness likewise fails.

F.3d 654, 657 (5th Cir. 1994) *citing Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir.),

*cert. denied*,  474 U.S. 838, 106 S.Ct. 117 (1985).  A defendant ordinarily will not be

heard to refute his testimony given at a plea hearing while under oath.  *United States v.*

*Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) *citing United States v. Fuller,* 769 F.2d

1095, 1099 (5th Cir.1985).  "Solemn declarations in open court carry a strong presumption

of verity," forming a "formidable barrier in any subsequent collateral proceedings."  *Id*.

*quoting  Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d

136 (1977).  Moreover, any documents signed by the defendant in connection with a

guilty plea are entitled to "great evidentiary weight."  *United States v. Abreo*, 30 F.3d 29,

32 (5th Cir. 1994).

      For a guilty plea to be "intelligently" and "knowingly" entered, the defendant must

understand both the true nature of the charge against him and "the consequences" of a

guilty plea,  respectively.  *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991);

*United States v. Pearson,* 910 F.2d 221, 223 (5th Cir. 1990), *cert. denied*, 498 U.S. 1093,

111 S.Ct. 977, 112 L.Ed.2d 1062 (1991).

      A plea is intelligent if the defendant understood the nature and substance of the

charges against him and not necessarily whether she understood their technical legal

effect.  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) *citing  Taylor v. Whitley*, 933 F.2d

325, 329 (5th Cir. 1991), *cert. denied*,  503 U.S. 988, 112 S.Ct. 1678, 118 L.Ed.2d 395

(1992).  The defendant must understand what he is being charged with.  *United States v.*

*Suarez*, 155 F.3d 521, 524-25 (5th Cir. 1998).

With respect to guilty pleas, the "knowing" requirement that a defendant understand "the consequences" of a guilty plea means only that the defendant must know the maximum prison term and fine for the offense charged. *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) *citing Barbee v. Ruth,* 678 F.2d 634, 635 (5th Cir. 1982), *cert. denied*, 459 U.S. 867, 103 S.Ct. 149, 74 L.Ed.2d 125 (1982); *Ables v. Scott*, 73 F.3d 591, 592-93 n. 2 (5th Cir. 1996), *cert. denied*,  517 U.S. 1198, 116 S.Ct. 1696, 134 L.Ed.2d 795 (1996) *citing United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990).

"[A] plea of guilty is not voluntary if it is induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." *United States v. Hernandez,* 234 F.3d 252, 255 at fn. 3 (5th Cir. 2000).

In the instant matter, the record is clear that petitioner's plea was entered knowingly, voluntarily and intelligently.  Petitioner was expressly advised of the nature of the charges against him by the Court during his plea proceeding and he expressly acknowledged, while under oath, that he understood the charges. [rec. doc. 239, pgs. 7-12]. Furthermore, in connection with his plea, petitioner executed a document entitled Elements of the Offense, in which each element of both offenses to which petitioner pled guilty are specifically set forth and fully explained. [rec. doc. 164-2].

Moreover, petitioner expressly admitted, while under oath, that he had not been threatened by anyone or forced to enter a guilty plea.  [rec. doc. 239, pg. 20].

Finally, while petitioner now claims that his plea was not knowingly entered because he did not receive the mandatory statutory minimum twenty year sentence for his

conspiracy conviction, petitioner's sworn testimony during his plea proceeding refutes petitioner's claim.  During his plea proceeding, petitioner was expressly advised of the statutory mandatory minimum and maximum prison term and fine for the conspiracy charge by thorough and direct questions posed by Judge Haik, and petitioner unambiguously acknowledged that he understood the statutory mandatory minimum and maximum penalty which could be imposed.[7] [rec. doc. 239, pg. 14-19].

Petitioner also unambiguously acknowledged that he had not been promised any particular sentence and that he understood the penalty actually imposed would be determined by the Court, which was not bound by the Guideline range, or recommendations of counsel.  Petitioner was also advised that his sentence could not be determined until after the PSI had been completed by the probation department and that his sentence would be in the discretion of the Court, between the statutory mandatory minimum and maximum penalty, to which petitioner again acknowledged his understanding. Moreover, petitioner expressed his understanding that he would be bound by his plea, and unable to withdraw it, in the event the Court imposed a more severe

---

[7]THE COURT: . . . If in fact and indeed I get the recommendation from the – or the government decides not to pursue the second enhancement, let me put it that way, then the mandatory minimum would be 20 to life.  Do you understand that?
        THE DEFENDANT: Yes.
        THE COURT: All right. Knowing and understanding that, you understand that's the maximum and minimum that you could receive in this matter?
        THE DEFENDANT: Yes, I do.
[*Id.* at 16].

sentence than he expected.[8]  [*Id.* at 22-24].

In sum, petitioner's sworn testimony during the plea hearing belie any argument

that petitioner's plea was unknowingly, involuntarily or unintelligently entered.  It is clear

that petitioner was not promised the statutory mandatory minimum sentence of twenty

years.  Rather, the record demonstrates that petitioner was advised, and understood, that

---

[8]In pertinent part, petitioner was advised as follows:
THE COURT: Has anyone made any other predictions, prophecies, or promises to entice
you to plead guilty, Mr. Mouton?
THE DEFENDANT: No.
THE COURT: And do you understand that any recommendation of a sentence agreed to
by your counsel and the United States Attorney is not binding on the Court, and that you
might, on the basis of your guilty plea, receive a more severe sentence than requested or
recommended?
THE DEFENDANT: Yeah
THE COURT: All right.  Has anyone made any predictions, prophecies, or promises to
you as to what your exact sentence will be at this time?
THE DEFENDANT: No, sir.
THE COURT: All right.  But, in fact, I know you and Mr. Gauthier went over the
Sentencing Guidelines and how they might apply in your case; is that right?
THE DEFENDANT: Yeah.  Yes, sir.
THE COURT: Okay.  Do you understand that the Court will not be able to determine the
Guideline sentence for your case until after the presentence report has been completed
and the government and you have the opportunity to challenge the facts reported by the
probation officer?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that after it has been determined what Guidelines
apply to you case, the judge has the authority in some circumstances to impose a
sentence that is more severe or less severe than the sentence called for in the Guidelines?
THE DEFENDANT: Yes, sir.
THE COURT: For instance, if there is mandatory minimum, I can't go below the
mandatory minimum. And if there is a mandatory maximum, I can't go above the
mandatory maximum.  But anywhere in between is kind of free game; do you understand
that?
THE DEFENDANT: Yes, sir.
. . .
THE COURT: All right. And do you further understand that if the sentence is more
severe than you expected, you will still be bound by your plea and you'll have no right to
withdraw it?
THE DEFENDANT: That's right.
[*Id.* at 22-24].

the statutory minimum sentence which could be imposed was twenty years (240 months),

but that petitioner's actual sentence would depend upon the Guideline range computed by

the probation department and rested within the discretion of the Court.  In light of the

above, petitioner is not entitled to *habeas* relief on this claim.

Based on the foregoing reasons, the undersigned recommends that Chad Lawrence

Mouton's § 2255 Motion be **DENIED and DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties

aggrieved by this recommendation have fourteen (14) days from service of this Report

and Recommendation to file specific, written objections with the Clerk of Court. A  party

may respond to another party's objections within fourteen (14) days after being served

with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within**

**fourteen (14) days following the date of its service, or within the time frame**

**authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either**

**the factual findings or the legal conclusions accepted by the District Court, except**

**upon grounds of plain error.  *See Douglass v. United Services Automobile***

***Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the

United States District Courts, this court must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District

Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed this 6th day of September, 2012, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE